# United States District Court
# District of Massachusetts

JOSEPH LUND,
     Plaintiff,

     v.                        CIVIL ACTION NO. 11-11413-NMG

DANIEL HENDERSON,
JOHN WALCEK,
THOMAS JOYCE, in his capacity as
     CHIEF OF THE WAREHAM
     POLICE DEPARTMENT,
THE TOWN OF WAREHAM,
     Defendants.

## *REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#62)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On August 8, 2011, plaintiff Joseph Lund ("Lund") filed a nine-count complaint against defendants Daniel Henderson ("Henderson"), John Walcek ("Walcek"), Thomas Joyce, in his capacity as Chief of Police of the Wareham Police Department ("Joyce"), and the Town of Wareham ("Wareham") arising

out of the events that transpired on August 22, 2008. The claims alleged by the plaintiff include false arrest and false imprisonment (Count I); assault and battery (Count II); intentional infliction of emotional distress (Count III); violation of 42 U.S.C. § 1983 (Count IV); violation of civil rights under the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12 § 11I (Count V); malicious prosecution (Count VI); abuse of process (Count VII); negligent supervision - municipal defendants (Count VIII); and violation of civil rights - municipal defendants (Count IX).

Approximately two years after the institution of this action, on September 9, 2013, the defendants filed a motion for summary judgment (#62) accompanied by a memorandum of law in support (#63), a concise statement of undisputed material facts with attached exhibits (#64) and an affidavit of counsel (#65). In due course the plaintiff filed an opposition to the motion for summary judgment (#66[1]), a concise statement of material facts in dispute (#68), a memorandum of law (#70), an affidavit of the plaintiff (#69), an affidavit of counsel (#71) and fifty-five exhibits (#72). A reply brief (#74) was filed by the defendants on October 15, 2013. After the dispositive motion was

---

[1]

The identical document appears to have been submitted a second time on the same day and is docketed as document (#67).

2

referred to the undersigned for the issuance of a report and recommendation as to disposition (#79), oral argument was heard on April 15, 2014. Three days later, on April 18, 2014, the plaintiff submitted a supplemental memorandum. (#87) At this juncture, the summary judgment motion stands ready for resolution.

## II. The Facts

The following facts are gleaned from the defendants' statement of undisputed facts and the plaintiff's concise statement of material facts in dispute.[2] It shall be noted when a dispute of fact exists.

On August 22, 2008, Lund was in Dudley Square in Onset, Massachusetts, when he observed an unidentified man and woman yelling at each other across the street in front of the Onset Village Market. (#64 ¶ 1) The pair got into a car and left the scene. (#64 ¶ 1) There was also a group of teenagers congregated in the area in front of the market. (#64 ¶ 2; #72)

---

[2]

In their reply (#74), the defendants contend that Lund's statement of material facts in dispute (#68) fails to comply with Local Rule 56.1 *inter alia* because, in failing to distinguish between general facts of the case and material facts in dispute, "[i]t is clearly not a 'concise' statement of 'specific facts' in dispute." (#74 at 2) Whatever shortcomings the plaintiff's statement may have, in his memorandum Lund unequivocally states that he "disputes Defendant's (sic) Concise State of Undisputed Material Facts, Nos. 12, 16, 18, 19, 24, 25, 26, 27, 28, 29 and 38." (#70 at 1) All additional facts in Defendants' Concise Statement are deemed admitted for purposes of the summary judgment motion. *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties.").

Around 6:00 PM on August 22, 2008, a call was made to the Wareham Police Department about a disturbance at the Onset Village Market that appeared to be escalating. (#72)  Two police officers arrived on foot at the market, and one of those officers, Officer Lalli ("Lalli"), began speaking with Danny DeBarros ("DeBarros"), one of the teenagers in the group. (#64 ¶¶ 3, 4; #72)  DeBarros yelled at Lalli and began to back away and flail his arms. (#64 ¶ 5; #72)  Because DeBarros' yelling and swearing behavior "was observed by numerous motorists and pedestrians," Lalli decided to arrest DeBarros. (#72)  When Lalli attempted to handcuff DeBarros, he actively resisted. (#72)  The second officer, defendant Henderson, was moving in to assist Lalli when another teenager in the group, Dominic Alves, whose hand was in a cast, hit Lalli in the chest with the cast. (#64 ¶ 6)  At that point Henderson tased Dominic Alves. (#64 ¶ 7)

While Lalli continued to struggle with DeBarros with the assistance of Officer Leblanc ("Leblanc"), another Wareham police officer who had arrived at the scene, another teenager approached the officers demanding a cell phone from DeBarros. (#72)  This teenager was warned several times that she needed to back away or she would be arrested, but the teen continued loudly to yell her demands. (#72)  After a final warning that was ignored, she was arrested.

(#72)

After Dominic Alves was tased, his brother, Terrell Alves, rushed at Henderson, yelling and screaming; Henderson pulled out his pepper spray and ordered Terrell Alves to back off. (#64 ¶¶ 8, 9)  Terrell Alves retreated and began running around the square continuing to yell and scream in an attempt to incite the crowd. (#64 ¶ 10)  At this juncture, the scene was chaotic with the crowd being unruly. (#64 ¶ 11)  Lund was a witness to, not a participant in, this activity. (#70 at 1)

As these events unfolded, the crowd continued to grow with some members of the crowd becoming disorderly and confrontational in their objections to the arrests being made. (#72)  The entire on-duty patrol shift and detective units of the Wareham Police responded as back-up to Onset Village, and mutual aid was requested from Bourne and the State Police to assist in restoring order. (#72)

According to defendant Walcek, the melee at this point had grown to encompass Dudley Square, the park where the plaintiff was located. (#64 ¶ 12)  The plaintiff disputes this contention. (#70 at 1)  In his complaint Lund alleges that Terrell Alves came across the street and confronted him in the park. (#1 ¶ 7; #64 ¶ 13)  Initially the plaintiff testified at his deposition that Terrell Alves

did not say anything to him, but he later stated that Terrell Alves was waving his hands and yelling at him. (#64 ¶ 14)  According to Lund, he told Terrell Alves that his brother had been tased because he had assaulted a police officer. (#64 ¶ 15)  When speaking to Terrell Alves, the plaintiff had to raise his voice to be heard over the surrounding din, but he "wasn't yelling as much as [Terrell Alves] was yelling." (#64 ¶ 15)  At his deposition Lund admitted that he was "angry at the police" and "that's what [he] was complaining about." (#64 ¶ 17) The plaintiff acknowledged that police are a trigger for his anger issues. (#64 ¶ 17)

John Bullard, a witness who was with Lund in Dudley Square as the events of August 22, 2008 unfolded, testified at his deposition that the plaintiff was yelling at the police officers about their conduct. (#64 ¶ 16)  Lund disputes this statement. (#70 at 1[3])  Bullard further testified that the police officers ordered everyone to disperse, so he left but Lund stayed and continued to yell. (#64 ¶ 18)  The plaintiff disputes this statement. (#70 at 1[4])  Bullard also asserted that a police officer advised Lund that if he did not leave, he would be

---

[3]

A review of the deposition transcript (#64-8) reveals that Bullard so testified.  Therefore, the dispute must not be to the fact of what was said, but rather to the truth of the matter asserted.

[4]

Once again, the dispute goes to the truth of the matter asserted.

arrested, but the plaintiff did not leave. (#64 ¶ 19) Lund disputes this statement. (#70 at 1[5])

In his complaint the plaintiff alleged that "[w]ithout any reason . . . defendant Henderson suddenly grabbed the plaintiff from behind and handcuffed the plaintiff." (#1 ¶ 8; #64 ¶ 20) Lund acknowledged that after he was placed in cuffs, he "probably swore" at Henderson. (#64 ¶ 21) The plaintiff testified that, after putting him in cuffs, Henderson "dragged" him by the cuffs to the police cruiser, hit him on the head, pushed him down into the cruiser and shut the door. (#64 ¶ 22) The handcuffs caused pain to his right wrist, and Lund complained about the injury to several officers on the night of the incident about it. (#64 ¶ 23) On August 23, 2008, Lund sought medical treatment after speaking with an attorney (#64 ¶ 38); the plaintiff disputes this fact, although he testified in his deposition that he "sought medical (sic) that day [August 23, 2008] after talking to Attorney Edward Wells." (#64-1 at 90)

The following facts are disputed: The plaintiff testified that Walcek was the arresting officer but that he, Lund, never saw Walcek that day and he had no interaction with him. (#64 ¶ 24) Walcek claims that he was, in fact, the

---

[5] Once again, the dispute goes to the truth of the matter asserted.

arresting officer. (#64 ¶ 25)  According to Walcek, when interacting with Terrell Alves, Lund was using aggressive mannerisms, waving his arms and yelling.[6] (#64 ¶ 26)  In Walcek's view, this interaction was inciting people in a very fluid situation and was causing a bigger problem. (#64 ¶ 26)  Walcek feared that a riot could break out.[7] (#64 ¶ 26)  Walcek testified that he was the police officer who handcuffed Lund and walked him across the street.[8] (#64 ¶ 27)  Walcek further testified that the plaintiff protested his arrest and initially refused to be put in the police cruiser. (#64 ¶ 28)  In his deposition, Henderson testified that he heard the plaintiff and Terrell Alves arguing, but he did not remember either of them getting arrested because he was engaged in removing the taser probes from Dominic Alves. (#64 ¶ 29)

   None of the reporting officers stated that, prior to his arrest, Lund had in

------

[6]

      At his deposition, Walcek agreed that "[t]he only thing [he] saw with respect to Mr. Alves or Mr. Lund was that he was engaged with Mr. Alves in what looked to be an argument" (#72-3 at 48) and that the "two men were pointing and waving their arms at each other while yelling something unknown." (#72-3 at 51)

[7]

      According to his narrative incorporated in Lund's arrest report (#72-1), after arriving at the scene, Walcek saw two men across from the Village Market who he knew to be the plaintiff and Terrell Alves "pointing and waving there (sic) arms at each other while yelling something unknown.  Due to the large crowd and fear of a potential riot, [he] placed both males under arrest for Disorderly Conduct and Disturbing the Peace."

[8]

      Contrary to Bullard's testimony, Walcek testified that Lund was not warned to disperse before he was arrested. (#72-3 at 58-9; *see also* #72-6, Admission No. 2 ("No Wareham police officer ordered Plaintiff Joseph Lund to disperse or gave any verbal warning to Mr. Lund before he was arrested in Onset Village on August 22, 2008.  Response: Admit to the extent that the police reports indicate same."))

any way interfered with their law enforcement activities. (#72, #72-1, #72-2)
No police officer reported having heard the plaintiff utter any specific words to
incite others to riot or to indicate his participation in the events that transpired
in front of the Village Market. (#72, #72-1, #72-2) Walcek did not see Lund
attempt to assault anyone before he was arrested. (#72-3 at 56) Other
individuals who were arrested in Onset Village that evening had actively
interfered with the responding police officers, but had been given warnings to
disperse before they were arrested. (#72, #72-1, #72-2) Walcek testified that
he acted as he did:

> Because I had dealt with Mr. Lund in the past. I
> was aware of his record. I was aware of his
> involvement with incidents that were violent or
> potentially violent, and it was based upon those
> decisions that I did what I did.

#72-3 at 60.

It is undisputed that Lund was charged with disorderly conduct and
disturbing the peace. (#64 ¶ 30; #64-9) On October 23, 2008, the plaintiff
signed a Tender of Plea or Admission & Waiver of Rights in connection with the
criminal charges. (#64 ¶ 31; #64-9) This form reads, in part, as follows:

> I am not now under the influence of any drug,
> medication, liquor or other substance that would
> interfere with my ability to fully understand the

> constitutional rights that I am waiving when I plead guilty, or admit to sufficient facts to support a finding of guilty.
>
> I have decided to plead guilty, or admit to sufficient facts, freely and voluntarily upon the conditions which I have tendered in Section 1. My guilty plea or admission is not the result of force or threats, promises or other assurances.

#64 ¶ 31; #64-9.

The two charges were dismissed upon the payment of $200.00 in court costs, $100.00 per charge. (#64 ¶ 32; #64-9)

Henderson has been the subject of numerous complaints, and has a history of alleged false arrests and use of excessive force as a member of the Wareham Police force. (#68 ¶¶ 56-89; #72-12 - 72-24)  Henderson has never been subjected to discipline by his supervisors. (#72-5 at 32-33)

### III. The Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted); *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).

> Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists.

---

[9]

Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[t]he standard for granting summary judgment remains unchanged." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n.4 (1st Cir. 2011).

> This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1st Cir. 2012) (internal citations and quotation marks omitted); *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006); *Guay v. Burack*, 677 F.3d 10, 13 (1st Cir. 2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (further internal quotation marks omitted).

## IV. Discussion

Although out of order numerically, the Court shall address the plaintiff's federal claims first, followed by his state law claims.

### A.  Count IV - Violation of 42 U.S.C. § 1983

Lund alleges that defendants Henderson and Walcek violated his First, Fourth and Fourteenth Amendment rights by arresting him based on his non-threatening speech and gestures, and by arresting him without probable cause using excessive force in doing so.  At the hearing on the dispositive motion, defense counsel argued that Henderson and Walcek were entitled to the entry of summary judgment in their favor because Lund's version of events was unbelievable.  Of course, it is not within the province of the Court to make credibility determinations in the context of a motion for summary judgment; the veracity of a witness' testimony, as well as the weight to be accorded that testimony, is for the jury to decide.  When asked if, accepting the plaintiff's testimony as true, genuine issues of material fact existed on the section 1983 claims in Count IV, defense counsel agreed that such disputes remain extant.[10]

---

[10]

Similarly, genuine issues of material fact foreclose the entry of summary judgment on qualified immunity grounds. *Moses v. Mele*, 711 F.3d 213, 216 (1st Cir. 2013) ("Of course, if the success or failure of the qualified immunity defense turns on a question of fact that is unresolvable on the summary judgment record, summary judgment is improper.").

While admitting that genuine issues of material fact exist on Lund's civil rights claims, defense counsel nevertheless did contend that since Lund has identified Henderson as the police officer who put the cuffs on him and dragged him to the cruiser, and, further, the plaintiff denied seeing Walcek at all on the evening in question, that Walcek should be dismissed from the case. This position is unavailing. As a threshold matter, it is undisputed that Walcek is named in the police paperwork as the arresting officer. As the officer pressing charges, at a minimum he is a party to the abuse of process claim. It is true that at his deposition, the plaintiff testified as follows:

> Q. Tell me what - you identified Officer Walcek, W-a-l-c-e-k, in your complaint. What did he do during the incident that you have described to us today?
>
> A. Actually, I never even seen him. I think he was the arresting officer.
>
> Q. When you say 'arresting officer,' for you or for somebody else?
>
> A. He never put his hands on me. Henderson is the one who put his hands on me, but I think he was the arresting officer. I never seen him.
>
> Q. You never saw him?

A. No.

Q. So he had no interaction with you that day?

A. No.

#64-1 at 62-3[11].

Walcek, on the other hand, claims that he is the police officer who handcuffed Lund, arrested him and walked him to the police cruiser on August 22, 2008. Based on the record, it is unclear what roles, if any, Walcek and Henderson played in the alleged violations of the plaintiff's civil rights. "The critical

---

[11]

In a later-filed affidavit, Lund explained that before August 22, 2008, he "did not know any Wareham police officers by name, and that was the basis for my stating that I did not know Officer Walcek." (#78 ¶ 3) The plaintiff subsequently came to understand that Walcek was an officer with whom he had interacted on prior occasions, he just had not know his name at the time of those previous interactions. (#78 ¶ 6) The plaintiff reiterated:

> I in fact was apprehended and injured by Officer Henderson on August 22, 2008, not Officer Walcek who I would have recognized if he was the one who put me in handcuffs. I did not know Officer Henderson before he apprehended me, but I learned his name at the time and I did know he was the same one who I saw tasing Dominic Alves a few minutes before he came after me.

> As far as I know, Officer Walcek may have been at the scene on August 22, 2008, but I did not interact with him there in any way. I did not notice him being there, but there were dozens of police officers all over the place from several towns, so I cannot and do not say he was not there. I can and do say he was not the one who put cuffs on me and injured me, because I know that it was Officer Henderson.

#78 ¶¶ 7-8.

determination to be made" as between Lund and the two police officers is whether the plaintiff actually was arrested without probable cause and, secondly, whether excessive force was used. *Williams v. Atkins*, 333 F. Supp.2d 209, 213-14 (S.D.N.Y., 2004). The jury could credit the plaintiff's testimony that such violations did occur, but could find that he was mistaken as to which police officer was involved.

In short, "[n]either side has conclusive evidence establishing involvement or lack of involvement" of particular officers in the alleged constitutional violations. *Crenshaw v. Rivera*, 2009 WL 377985, at *20-1 (N.D. Ill., Feb. 12, 2009). Because genuine issues of material fact exist, summary judgment on Count IV of the complaint, violations of 42 U.S.C. § 1983 against Henderson and Walcek, should be denied.

## B. Count VIII - Negligent Supervision

Defense counsel conceded at oral argument that, to the extent genuine issues of material fact exist on the plaintiff's section 1983 claim against the individual officers, so, too, would genuine issues of material fact exist on Lund's negligent supervision claim against the municipal defendants, Town of Wareham and Chief of Police Thomas Joyce. *See*, e.g., *LaPierre v. City of*

*Lawrence*, 2013 WL 1829120, at 2-4 (D. Mass., May 1, 2013). In light of this concession, summary judgment should be denied on Count VIII of the complaint.

## C. Count IX - Violation of Civil Rights/Municipal Defendant

Defense counsel conceded at oral argument that, to the extent genuine issues of material fact exist on the plaintiff's section 1983 claim against the individual officers, so, too, would genuine issues of material fact exist on Lund's section 1983 claim against the municipal defendants, Town of Wareham and Chief of Police Thomas Joyce. *See*, e.g., *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). In light of this concession, summary judgment should be denied on Count IX of the complaint.

## D. Count I - False Arrest and False Imprisonment

Under Massachusetts law:

> False imprisonment consists of the '(1) intentional and (2) unjustified (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement.' An arresting officer may be liable for false imprisonment unless the officer had 'reasonable grounds' for making the arrest. The requirement of 'reasonable grounds' substantially overlaps with the constitutional requirement of probable cause.

*Sorenti v. Doyle*, 2013 WL 1403489, at *4 (D. Mass., Apr. 4, 2013) (footnotes

and citations omitted); *Robinson v. Cook*, 863 F. Supp.2d 49, 72 (D. Mass., 2012), *aff'd*, 706 F.3d 25 (1st Cir. 2013), *cert. denied*, 133 S.Ct. 2831 (2013).

It has been determined that "[p]olice officers may be liable for this tort unless the police officer had a legal justification for the restraint. Such justification exists where the officer had probable cause to arrest the suspect." *Robinson*, 863 F. Supp.2d at 72 (internal citations and quotation marks omitted).

As has been noted, taking the facts in the light most favorable to Lund, genuine issues of material fact exist as to whether Henderson or Walcek had probable to arrest the plaintiff. Therefore, summary judgment on the false arrest and false imprisonment claim should be denied.

E. Count II - Assault and Battery

In his complaint, the plaintiff alleged: "Defendant Henderson placed his hands, without consent, upon plaintiff Lund and otherwise assaulted and battered plaintiff Lund in Wareham, Massachusetts on August 22, 2008." (#1 ¶ 19) In his deposition testimony Lund stated that Henderson "came up behind" him, "[p]ut the cuffs on [him] and dragged [him]" and [h]it him in the head putting [him] in the cruiser." (#64-1 at 41-2) At another point the plaintiff testified that Henderson "whacked me in the back of the head" and "pretty much manhandled me." (#64-1 at 43-4) Lund claimed that he was

injured because "[t]he cuff was imbedded in my right wrist. He hit me in the back of the head. My neck was bothering me." (#64-1 at 44)

"Assault, under Massachusetts tort law, requires that the defendant 'act[ed] intending to cause a harmful or offensive contact' with plaintiff, 'or an imminent apprehension of such a contact,' and that plaintiff was 'thereby put in such imminent apprehension.' *Restatement (Second) of Torts* § 21(1) (1965); *see also Conley v. Romeri*, 60 Mass. App. Ct. 799, 806 N.E.2d 933, 939 n. 6 (2004)." *Kennedy v. Town Of Billerica*, 617 F.3d 520, 538 (1st Cir. 2010); *Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430, 434, 963 N.E.2d 1196, 1199 - 1200 (Mass. App. Ct., 2012). "'An actor is subject to liability to another for battery if [a] he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other directly or indirectly results.'" *Waters v. Blackshear*, 412 Mass. 589, 590, 591 N.E.2d 184, 185 (1992) (quoting *Restatement (Second) of Torts* § 13 (1985). Massachusetts law provides that:

> a police officer may be liable for assault and battery for using 'intentional and unjustified force' in making an arrest. An officer is permitted to use 'such force as is reasonably necessary to effect the arrest.' The officer

may not, however, use force that is excessive or
unreasonable under the circumstances.

*Sorenti*, 2013 WL 1403489, at *5 (footnotes and citations omitted); *Raiche v.
Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) ("Massachusetts law allows for assault
and battery claims against police officers who use excessive force in conducting
an arrest.").

Lastly, "[w]here, as here 'a plaintiff alleges both a § 1983 excessive force claim
and common law claims for assault and battery, [the] determination of
reasonableness of the force used under § 1983 controls [the] determination of
reasonableness of the force used under the common law assault and battery
claims.'" *Robinson*, 863 F. Supp.2d at 73 (quoting *Raiche*, 623 F.3d at 40).

Since defense counsel has conceded that the relevant facts are in dispute
on the excessive force claim, so, too, those facts are in dispute in the state law
assault and battery claim. Lund's deposition testimony raises genuine issues of
material fact as to whether Henderson, in fact, took the actions against the
plaintiff that Lund claims he did, and, if he did, whether the force that was used
was reasonable under the circumstances. As a consequence, summary judgment
on Count II for assault and battery should be denied.

F. Count III - Intentional Infliction of Emotional Distress

In order to establish a claim for the intentional infliction of emotional

20

distress under Massachusetts law, it is incumbent upon the plaintiff to prove

> '(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.'

*Limone v. United States,* 579 F.3d 79, 94 (1st Cir. 2009) (quoting *Agis v. Howard Johnson, Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315, 318-19 (1976)); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013).

"Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Young,* 717 F.3d at 240 (internal citations and quotation marks omitted). Severe emotional distress means more than "mere 'emotional responses including anger, sadness, anxiety, and distress,' which, though 'blameworthy,' are 'often not legally compensable.'" *Kennedy,* 617 F.3d at 530. (quoting *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 732 N.E.2d 330, 338 (2000)).

The plaintiff has cited no case in which an unlawful arrest alone, even one

with the type of excessive force alleged in this case, i.e., pulling the plaintiff's hands and twisting his arms behind his back, cuffing him, dragging him to the cruiser and pushing his head down to get him into the cruiser, has been found to reach the level of "extreme and outrageous conduct" required in order to establish an intentional infliction of emotional distress claim. The Court finds as a matter of law, taking the facts in the light most favorable to Lund, that the actions alleged in this case are insufficient to be characterized "as atrocious, and utterly intolerable in a civilized community." *Young*, 717 F.3d at 240. Summary judgment should enter for the defendants on the intentional infliction of emotional distress claim.

## G. Count V - Violation of Mass. Gen. L. c. 12 § 11I

Lund alleges that defendants Henderson and Walcek violated the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. L. c. 12 §§ 11H & I. To succeed on a claim under the MCRA, a plaintiff must prove that:

> '(1) [his] exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference . . . was by threats, intimidation, or coercion.'

*Shea v. Porter*, 2013 WL 1339671, at *6 (D. Mass., Mar. 29, 2013) (quoting

*Cryer v. Clarke*, 763 F. Supp.2d 237, 254 (D. Mass., 2010)); *Turkowitz v. Town of Provincetown*, 914 F. Supp.2d 62, 76 (D. Mass., 2012) ("To establish his claim under the Massachusetts Civil Rights Act ("MCRA"), plaintiff must show 1) defendant officers threatened, intimidated or coerced him 2) to prevent him from exercising a constitutional right.").

"The Supreme Judicial Court of Massachusetts has interpreted the MCRA to be co-extensive with § 1983 except for two disparities: (1) the MCRA does not require any state action . . . , and (2) a claim under the MCRA requires a violation by threats, intimidation, or coercion." *Kelley v. LaForce*, 288 F.3d 1, 10 (1st Cir. 2002); *Barbosa v. Conlon*, 962 F. Supp.2d 316, 331 (D. Mass., 2013) ("The purpose of the MCRA is to provide under state law a remedy coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not." (internal citations and quotation marks omitted)); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 WL 4595369, at *20 (D. Mass., Sept. 30, 2008) ("[T]here is no indication that the MCRA was intended to provide broader relief than that provided by § 1983.").

In this case, the plaintiff's arrest without probable cause and the use of excessive force in executing that arrest, if these are found to have occurred, were a direct violation of Lund's Fourth Amendments rights. "The direct

violation of a constitutional right does not establish a MCRA violation because it is not an attempt to force someone to do something the person is not lawfully required to do." *Turkowitz*, 914 F. Supp.2d at 76 (internal citations and quotation marks omitted). The Court's analysis in *Goddard v. Kelley* is persuasive:

> The two constitutional rights at stake are the right to be free from excessive force and the right to be free from false arrest. If the statute [MCRA] applies, it would mean that the defendants assaulted the plaintiff in order to cause the plaintiff to give up his right to be free from excessive force, or threatened arrest in order to cause him to give up his right to be free from false arrest. Such a construction would torture the statute well beyond its plain meaning, and therefore the Court concludes that it simply does not apply to the present facts.

*Goddard v. Kelley*, 629 F. Supp.2d 115, 128-129 (D. Mass., 2009) (citations omitted); *Barbosa*, 962 F. Supp.2d at 332 ("[T]he plaintiffs have put forth sufficient facts to establish a violation of their constitutional rights. This, however, is not enough [to establish an MCRA claim]. The plaintiffs have not put forth any evidence to support the conclusion that the defendants' conduct was intended to coerce them into refraining from the exercise of a right or privilege secured by law.").

Lund "conflates the two MCRA requirements. [The plaintiff's] seizure and arrest cannot satisfy both the 'coercion' and 'violation' elements absent some evidence that the initial force was intended to coerce [Lund]." *Eason v. Alexis*, 824 F.

Supp.2d 236, 245 (D. Mass., 2011).

Because there was no interference "by threats, intimidation or coercion," Mass. Gen. L. c. 12 § 11H, there was no violation of the MCRA on the facts taken in the light most favorable to the plaintiff. The defendants are entitled to summary judgment on this claim.

## H. Count VI - Malicious Prosecution

To prove his malicious prosecution claim, Lund

> must show: '(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice.' *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir.2001) (citing *Correllas v. Viveiros*, 410 Mass. 314, 318, 572 N.E.2d 7 (1991)).

*Rando v. CVS Pharmacy, Inc.*, 2013 WL 6489947, at *2 (D. Mass., Dec. 9, 2013); *Morrissey v. Town of Agawam*, 883 F. Supp.2d 300, 311-12 (D. Mass., 2012).

On the record before the Court, the plaintiff cannot establish the second element of the claim, to wit, that the criminal proceedings terminated in his favor.

It is undisputed that on October 23, 2008, Lund signed a Tender of Plea or Admission which stated that "I [Lund] have decided to plead guilty, or admit

to sufficient facts, freely and voluntarily." (#64 ¶ 1; #64-9)  When comparable

circumstances were addressed, it was determined that:

> [The plaintiff's] admission to sufficient facts contradicts his claims of innocence regarding the charge of violating a municipal bylaw or ordinance for operating a business without a license. Accordingly, the court did not terminate the proceeding on this charge in [the plaintiff's] favor as a matter of law. *See Wynne v. Rosen*, 391 Mass. 797, 464 N.E.2d 1348, 1351 (1984); *see also Britton v. Maloney*, 196 F.3d [24] at 31 [(1st Cir. 1999)] (noting there is 'successful termination of the underlying action as long as the circumstances "compel[led] an inference that there existed a lack of reasonable grounds to pursue the prosecution"") (quoting *Wynne*, 464 N.E.2d at 1351); *Simmons v. City of Brockton*, 1994 WL 725181, *1 (D. Mass. Dec. 15, 1994) (dismissal of criminal case when the plaintiff 'stipulated that she would not run an illegal boarding house in the future' was not favorable termination for purposes of malicious prosecution claim).

*Boyle v. Barnstable Police Dept.*, 818 F. Supp.2d 284, 303 (D. Mass., 2011) (footnote omitted).

Indeed, in a supplemental brief (#87) filed on April 18, 2014, Lund states that

his "admission of sufficient facts precludes a claim of malicious prosecution."

Summary judgment should enter in the defendants' favor on the malicious

prosecution claim.[12]

---

[12] That the malicious prosecution claim is without merit does not implicate the viability of the plaintiff's state or federal claims for false arrest. *See, e.g., Earle v. Benoit*, 850 F.2d 836, 849 (1st Cir. 1988) ("It is one

## I. Count VII - Abuse of Process

Under Massachusetts law,

> The elements of an abuse of process claim are 'that "process" was used, for an ulterior or illegitimate purpose, resulting in damage.' *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636, 925 N.E.2d 513 (2010) (Millennium). To sustain the claim, 'the fact finder must find that process was used "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed."' *Id.*, quoting *Quaranto v. Silverman*, 345 Mass. 423, 426, 187 N.E.2d 859 (1963). Filing a groundless claim is not an element of the tort, but it is relevant, because it may 'tend[ ] to show that the process was used for an ulterior purpose.' *Fishman v. Brooks*, 396 Mass. 643, 652, 487 N.E.2d 1377 (1986). However, the ulterior purpose element is not satisfied merely by a showing that a person commenced litigation knowing it was groundless. *Beecy v. Pucciarelli*, 387 Mass. 589, 596, 441 N.E.2d 1035 (1982).
>
> \*\*\*\*\*
>
> In an abuse of process claim, in contrast to a claim for malicious prosecution, such a motive does not alone suffice to show ulterior purpose. FN35  Rather, the ulterior purpose must be to gain some collateral advantage. . . .

---

thing to treat a criminal conviction—even one that is later reversed—as barring a subsequent cause of action for malicious prosecution against the complaining witness. It is another to treat such a conviction as determinative of whether an arresting officer had probable cause, at the time he made an arrest, to have arrested someone. Whether or not an arresting officer had probable cause depends on the facts and circumstances known to police at the time of the arrest.").

> FN35. An ulterior purpose is not simply the intent to
> harm the other party directly by bringing suit, but
> rather the intent to gain some other end indirectly. *See,*
> e.g., *Millennium Equity Holdings, LLC v. Mahlowitz*, 456
> Mass. 627, 640, 925 N.E.2d 513 (2010) ( *Millennium*
> ) (ulterior purpose of suit was to disqualify defendant
> from serving as divorce attorney to plaintiff's wife);
> *Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass.
> 396, 408–409, 772 N.E.2d 552 (2002) (evidence police
> encouraged criminal prosecution to preempt tort and
> civil rights claims sufficient to put abuse of process
> claim to jury). Contrast *Ladd v. Polidoro*, 424 Mass.
> 196, 199–200, 675 N.E.2d 382 (1997) (groundless
> claim and harm to defendant insufficient to show
> abuse of process, absent showing of ulterior motive).

*Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713-714, 947 N.E.2d 520, 534-35 (2011)
(additional footnote omitted); *Rando*, 2013 WL 6489947, at *4; *Damon v.
Hukowicz*,  964 F. Supp.2d 120, 141 (D. Mass., 2013).[13]

It is the plaintiff's theory that although Henderson was the officer who
handcuffed him and dragged him to the police cruiser causing him injury,
because of Henderson's history of having complaints lodged against him for
false arrests and use of excessive force, Walcek was named as the arresting
officer "to cover up what Henderson did to me." (#64-1 at 67)  If the jury were
to believe Lund's version of the facts that Walcek falsified his arrest report

---

[13]

"In contrast to a claim for malicious prosecution, a claim under this theory requires proof neither
of a termination in the plaintiff's favor, nor want of probable cause." *Fletcher v. Wagner*, 221 F. Supp.2d 153,
155 (D. Mass., 2002); *Turkowitz v. Town of Provincetown*, 2010 WL 5583119, at *8 (D. Mass., Dec. 1, 2010),
*Report and Recommendation adopted*, 2010 WL 5583113 (D. Mass., Dec. 21, 2010).

which, in turn, served as the basis for a complaint to issue against the plaintiff for disorderly conduct and disturbing the peace, in order to cover up for Henderson's actions, the plaintiff would have established an ulterior motive for the use of process. *See*, e.g., *Turkowitz v. Town of Provincetown*, 2010 WL 5583119, at *9 (D. Mass., Dec. 1, 2010) ("[I]f police officers falsify arrest reports which then serve as a basis for an application for a complaint, 'process' was used."), *Report and Recommendation adopted*, 2010 WL 5583113 (D. Mass., Dec. 21, 2010); *Gutierrez v. Massachusetts Bay Transportation Authority*, 437 Mass. 396, 408-09, 772 N.E.2d 552, 564 (2002) ("The plaintiffs presented evidence that the officers falsified arrest reports that served as the basis for sworn applications for complaints. Thus, there was evidence from which a jury could conclude that the officers caused papers to issue by a court to bring a party within its jurisdiction."). Genuine issues of material fact exist on the claim for abuse of process.

## V. Recommendations

For all of the reasons stated, I RECOMMEND that Defendants' Motion For Summary Judgment (#62) be ALLOWED with respect to the claims of Intentional Infliction of Emotional Distress (Count III), Violation of Civil Rights Under Mass. Gen. L. c. 12 § 11I (Count V) and Malicious Prosecution (Count VI). I FURTHER RECOMMEND that said motion be otherwise DENIED.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271, 273 (1ˢᵗ Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4, 6 (1ˢᵗ Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1ˢᵗ Cir. 1983); *United States v. Vega*, 678 F.2d 376,

378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140, 148-49 (1985).

/s/ *Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

April 23, 2014.